**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**October 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JOHN WARE,

    Plaintiff - Appellant,

v.

MERCY HEALTH,

    Defendant - Appellee.

No. 24-6012
(D.C. No. 5:22-CV-00737-PRW)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.
_____

Plaintiff John Ware, a former employee of defendant Mercy Health (Mercy), filed this action alleging, in relevant part, that Mercy discriminated and retaliated against him in violation of the Americans with Disabilities Act (ADA) and Oklahoma's Administrative Workers' Compensation Act (OKWCA). The district court granted summary judgment in favor of Mercy. Mr. Ware now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Between October 2019 and August 2021, Mr. Ware worked as an Environmental Services Tech II in the Environmental Services Department of Mercy Hospital Oklahoma City. Mr. Ware was supervised by Marcus Alexander, who in turn was supervised by Rhoda Grayson.

On March 30, 2020, Mr. Alexander gave Mr. Ware a verbal warning for accumulating five "occurrences" under Mercy's Attendance Policy. R. vol. I at 285. Occurrences included unscheduled absence, tardiness, and leaving early from a shift. Mr. Alexander advised Mr. Ware that "[f]urther occurrences of absenteeism may result in further corrective action, up to and including termination." *Id.*

On October 12, 2020, Mr. Alexander gave Mr. Ware a written warning for accruing eight occurrences in the prior 12 months. Mr. Alexander again advised Mr. Ware that "[f]urther occurrences of absenteeism may result in further corrective action, up to and including termination." *Id.* at 287.

On January 11, 2011, Mr. Ware injured his right shoulder at work. Because the injury required surgery, Mr. Ware requested and received leave under the Family and Medical Leave Act (FMLA) from January 25 to February 14, 2021. Mr. Ware also filed a claim with the Oklahoma Workers' Compensation Commission regarding the injury. Mr. Ware had a follow-up surgery on his right shoulder on June 15, 2021. Mercy authorized Mr. Ware to take FMLA leave from that date through June 29, 2021.

2

Mr. Ware did not show up for his next scheduled shift on July 23, 2021, and was assigned an occurrence under the Attendance Policy. On July 26 Mr. Alexander gave Mr. Ware a "Final Warning" under the Attendance Policy. R. vol. I at 289. He advised Mr. Ware that "[i]mmediate and sustained improvement to attendance" was expected of him, and "that 1 additional occurrence will lead to the next level of corrective action." *Id.*

Mr. Ware accrued additional occurrences under the Attendance Policy for absences on July 29 and August 4. On August 10, 2021, Mr. Alexander and Ms. Grayson terminated Mr. Ware's employment.

## II

Mr. Ware filed this action against Mercy. His complaint asserted claims of disability-based discrimination and retaliation under the ADA, a claim of retaliation in violation of the OKWCA, and other claims not at issue on appeal.

Mercy moved for and was granted summary judgment on all Mr. Ware's claims. Mr. Ware now appeals.

## III

Mr. Ware raises two issues on appeal. First, he argues that the district court erred by not giving due consideration to his evidence of pretext in support of his claims that Mercy discriminated and retaliated against him in violation of the ADA. Second, he argues that the district court failed to fully address his ADA and OKWCA claims before granting summary judgment in favor of Mercy. For the reasons that follow, we reject both arguments and affirm the decision of the district court.

3

A

We review de novo a district court's grant of summary judgment. *See Davidson Oil Co. v. City of Albuquerque*, 108 F.4th 1226, 1230 (10th Cir. 2024). In doing so, we view the evidence in the light most favorable to the nonmoving party. *See id.* "A court should grant summary judgment if it determines no genuine dispute exists about any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 1230–31 (citing Fed. R. Civ. P. 56(a)).

B

Mr. Ware begins by challenging the district court's grant of summary judgment in favor of Mercy on his claims that Mercy discriminated and retaliated against him in violation of the ADA. According to Mr. Ware, the district court "severely discounted" his "pretextual evidence and the reasonable inferences that could be drawn from the facts." Aplt. Br. at 9.

We analyze ADA discrimination and retaliation claims under the three-step framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *See Litzsinger v. Adams Cty. Coroner's Office*, 25 F.4th 1280, 1287 (10th Cir. 2022) (ADA discrimination claims); *Edmonds-Radford v. Southwest Airlines Co.*, 17 F.4th 975, 994 (10th Cir. 2021) (ADA retaliation claims). "First, the plaintiff must establish a prima facie case of discrimination or retaliation." *Litzsinger*, 25 F.4th at 1287 (internal quotation marks omitted). "The burden then shifts to the defendant, who must proffer a legitimate non-discriminatory reason for the adverse employment action." *Id.* (internal

quotation marks omitted). "At the third step, the burden shifts back to the plaintiff to show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual." *Id.* (internal quotation marks omitted).

The district court assumed, without deciding, that Mr. Ware could satisfy the first step for each of his claims[1] and concluded that Mercy satisfied its burden under the second step. Neither party challenges these determinations. Thus, our focus is on the third step of the framework, "which is whether a reasonable juror could find that [Mercy's] proffered reason for terminating [Mr. Ware] was pretextual." *Id.*

"In assessing pretext, [we] examine[] the facts as they appeared to the decisionmakers, and we cannot second-guess [Mercy's] business judgment." *Edmonds-Radford*, 17 F.4th at 991. "[I]t matters not if [Mercy's] reasoning was correct, just whether it honestly believed in the reason for the termination." *Id.* Mr. Ware "can establish pretext by showing weaknesses, contradictions, or inconsistencies in [Mercy's] reasons such that a reasonable jury could find them unworthy of belief." *Id.*

---

[1] In both his response in opposition to Mercy's motion for summary judgment and his opening appellate brief, Mr. Ware suggests, in passing, that Mercy discriminated against him not only by terminating him, but also by having its security officers monitor him while he was performing postsurgery, light-duty work. He has never, however, identified nor treated this as a claim of discrimination distinct from his termination. And, in any event, he consistently relied on the same evidence of pretext with respect to all his claims. We therefore find it unnecessary to address Mercy's purported monitoring of his light-duty work.

In his response in opposition to Mercy's summary-judgment motion, Mr. Ware made three specific arguments in an attempt to establish pretext. First, he noted that he received a positive performance evaluation in October 2020, before his two surgeries. Second, he argued that Mercy "intentionally misapplied" the Attendance Policy and gave him "unwarranted occurrences until it reached the magic number '10' to get rid of him." R. vol. II at 30. And third, he argued that Mr. Alexander forged Mr. Ware's signature on the October 12, 2020 corrective-action form. The district court concluded, and we agree, that this was insufficient to establish pretext.[2]

The performance evaluation that Mr. Ware refers to occurred in October 2020, about one year after he started working at Mercy, and included comments from the evaluator that Mr. Ware "ha[d] been a pleasure to work with" and was "a good detailer" and "hard worker." R. vol. II at 74. We agree with the district court, however, that these positive statements did not "contradict the then-existing evidence of attendance issues, which necessarily formed a basis for the later final warning and

---

[2] In his opening appellate brief, Mr. Ware appears to make two other arguments in an attempt to establish pretext. First, he argues that "[n]owhere in" Mercy's "termination document does it state that [he] was terminated for 'patterned absenteeism.'" Aplt. Br. at 13. Second, he points to evidence that Mercy had its security officers "spend valuable time watching him work while" he was "on light duty" after his first surgery. *Id.* at 16.

Because Mr. Ware did not raise these pretext arguments below, we need not consider them for the first time on appeal. *See Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005) (noting that we "seldom consider[] an issue not presented to the district court—especially when the appeal is of a summary judgment"); R. vol. II at 29–30 (discussing evidence of pretext with respect to the ADA discrimination claim), 33–34 (discussing evidence of pretext with respect to the ADA retaliation claim).

termination." *Id.* at 208. Also, that he did good work when he showed up does not establish a good attendance record.

Mr. Ware contests four of the occurrences listed on his termination form. After reviewing the record on appeal, we conclude that a jury could, at most, find in favor of Mr. Ware with respect to only the occurrence on July 29, 2021.[3] Setting that occurrence aside, Mr. Ware would have, as of the date of his termination, accumulated at least nine occurrences. That was more than enough occurrences to justify Mercy's termination of his employment under the Attendance Policy, which stated that termination of employment would "generally be administered" when an employee had a "[t]otal of eight (8) occurrences." R. vol. I at 281. More importantly, he was advised on July 26 that one more occurrence "will lead to the next level of corrective action," and he had an additional occurrence on August 4.

Finally, Mr. Ware asserts Mr. Alexander forged Mr. Ware's signature on a "Corrective Action Form, dated October 12, 2020." Aplt. Br. at 12. Mr. Ware argues that this constitutes "evidence of" Mr. Alexander's "motive to get rid of" Mr. Ware, and also establishes Mr. Alexander's "lack of credibility, which was a fact issue for the jury." *Id.*

We reject these arguments based on the alleged forgery. Mr. Ware points to no evidence and relies only on his speculation that Mr. Alexander signed Mr. Ware's

---

[3] Mr. Ware worked the day shift on that date, clocking in in the morning. At some point later that day, Mr. Ware allegedly visited the emergency room due to chest pain. It is undisputed that Mr. Ware did not clock out of work that day, which resulted in his being assigned an occurrence.

name on the October 12, 2020 corrective-action form. Also, even if Mr. Alexander had signed Mr. Ware's name, he has not explained how doing so showed a motive to get rid of him or even an intent to deceive. There is no dispute that Mr. Alexander took corrective action against Mr. Ware on October 12. Mr. Ware has not suggested how adding his purported signature on the form would prejudice him in any way.

For these reasons, we conclude Mr. Ware failed to present sufficient evidence to show pretext that would support an inference of discriminatory intent on the part of Mercy. We conclude the district court did not err in granting summary judgment in favor of Mercy as to Mr. Ware's ADA claims.

C

Mr. Ware also argues that the district court failed to fully address his ADA and OKWCA retaliation claims. We reject this argument. In his brief in opposition to Mercy's motion for summary judgment, Mr. Ware relied on the same evidence of pretext with respect to his ADA discrimination and his ADA and OKWCA retaliation claims. We have already considered that evidence and concluded it was insufficient to establish pretext. We therefore find no basis for concluding the district court erred in granting summary judgment with respect to the ADA and OKWCA retaliation claims.

Entered for the Court

Harris L Hartz
Circuit Judge

8